EXHIBIT H

# THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
### WAYCROSS DIVISION

| | | |
|---|---|---|
| **CONNIE JO MORRIS and JOHNNY MORRIS,** | ) | |
| | ) | |
| | ) | **CIVIL ACTION NO.: 5:20-CV-32** |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **WAL-MART STORES EAST, LP;** | ) | |
| **WAL-MART STORES EAST, LP, d/b/a** | ) | |
| **WAL-MART SUPERCENTER #593;** | ) | |
| **WALMART INC f/k/a WA-MART** | ) | |
| **STORES, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## PLAINTIFF'S EXPERT DISCLOSURES PURSUANT TO

## FEDERAL RULE OF CIVIL PROCEDURE 26(a)(2)

Pursuant to Federal Rule of Civil Procedure 26(a)(2) and the Joint Scheduling/Discovery Order, Plaintiffs, Connie Jo Morris and Johnny Morris, through their undersigned counsel, makes the following expert disclosures to the defendant in the above-referenced lawsuit.

Witnesses Who Do Not Provide a Written Report:

1.    Dr. Paul G. Lenzo, M.D.
Coffee Regional Medical Center
1101 Ocilla Highway
Douglas, GA 31533
912-384-1900

i.    Witness is an Emergency Room physician who treated plaintiff Connie Jo Morris's injuries.   The subject matter this expert witness is expected to present evidence on is plaintiff's injuries, treatment, response to treatment, causation, work status, historical information as to how injuries occurred, and prognosis.

ii.    Dr. Lenzo examined, ordered x-rays and diagnosed Connie Jo Morris with a fracture of the neck of her left femur, possible lung mass and hypertension. Dr. Lenzo referred Connie Jo Morris to other attending physicians for her fractured hip and possible lung mass.

In addition to the facts of the claim, Dr. Lonzo is expected to opine that the fall caused the injuries, the injury to the left femur. Dr. Lonzo is expected to opine that the injuries necessitated the surgery and treatment provided by him and other physicians. This is a summary of the facts provided by Dr. Lonzo's treatment. Coffee Regional Medical Center's treatment records have been provided in initial disclosures.

2.    Dr. Stephen Augustine, D.O.
Orthopedic Surgeons of GA
100 Doctors Drive, Suite I
Douglas, GA 31533
912-383-6575

i.    Witness is an orthopedic surgeon who treated plaintiff Connie Jo Morris's injuries. The subject matter this expert witness is expected to present evidence on is plaintiff's injuries, treatment, response to treatment, causation, work status, historical information as to how injuries occurred, and prognosis.

ii.    Dr. Augustine was referred to evaluate and treat Connie Jo Morris by Dr. Lonzo for her fractured left femur. Dr. Augustine performed a left hip bipolar hemiarthroplasty on Connie Jo Morris. Dr. Augustine also provided follow up treatment and evaluation through and including February 5, 2019.

iii.    In addition to the facts of the claim, Dr. Augustine is expected to opine that the fall caused the injuries, the injury to the left femur. Dr. Augustine is expected to opine that the injuries necessitated the surgery and treatment provided by him and other physicians. This is a summary of the facts provided by Dr. Augustine's treatment. Dr. Augustine's treatment records

have been provided in initial disclosures.

> 3.      Dr. Stan Sinclair, M.D.
> Douglas Internal Medicine
> 306 Westside Drive
> Douglas, GA 31533

i.      Witness is a physician who treated plaintiff Connie Jo Morris's injuries at Coffee Regional Medical Center.  The subject matter this expert witness is expected to present evidence on is plaintiff's injuries, treatment, response to treatment, causation, work status, historical information as to how injuries occurred, and prognosis.

ii.      Dr. Sinclair also saw Mrs. Morris at Vista Park Health & Rehab regarding her rehabilitation after having bipolar hemiarthroplasty left hip surgery.  Dr. Sinclair  provided treatment and evaluation through and including October 10, 2018.

iii.      In addition to the facts of the claim, Dr. Sinclair is expected to offer an opinion regarding the diagnostic studies and opine that the fall caused the injuries to the left hip.  Dr. Sinclair is expected to opine that the injuries necessitated the treatment provided in the emergency room and referral to an orthopedic.  This is a summary of the facts provided by Dr. Sinclair's treatment.  Coffee Regional Medical Center's and Vista Park Health & Rehab's treatment records have been provided.

> 4.      Dr. Aristotle P. Cochon, M.D.
> 1101 Ocilla Highway
> Douglas, GA 31533
> 912-384-1900

i.      Witness is a physician who treated plaintiff Connie Jo Morris's injuries at Coffee Regional Medical Center. The subject matter this expert witness is expected to present evidence on is plaintiff's injuries, treatment, response to treatment, causation, work status, historical information as to how injuries occurred, and prognosis.

     ii.     Dr. Cochon, as a hospitalist physician, evaluated, ordered x-rays, orderedlab work, evaluated and treated Mrs. Morris for her injuries.

     iii.     In addition to the facts of the claim, Dr. Cochan is expected to offer an opinion regarding the diagnostic studies and opine that the fall caused the injuries to the left hip.  Dr. Cochan is expected to opine that the injuries necessitated the treatment provided in the emergency room and referral to an orthopedic.  This is a summary of the facts provided by Dr. Cochan's treatment.  Coffee Regional Medical Center's treatment records have been provided.

Witnesses Who Must Provide a Written Report:

Jeffrey H. Gross
Consultant: Premises Liability
221 Wimberly Way
Powder Springs, GA 30127
770-942-8499

See attached report, exhibits, and attachments.

This the 3rd day of September, 2020.

John Andrew Tanner, Jr.
Attorney for the Plaintiff
Farrar, Hennesy & Tanner, LLC
P.O. Box 770
Douglas, GA 31534
Telephone:    912-384-2287
Drew@fhtlawyers.com

CERTIFICATE OF SERVICE

This is to certify that I have this day served upon counsel of record for the Defendants a

true and correct copy of the foregoing *Plaintiffs' Expert Disclosures Pursuant to Federal Rule*

*of Civil Procedure 26(a)(2)* by depositing the same in the U.S. Mail with proper postage thereon

to:

Michael L. Miller
Elissa B. Haynes
Drew Eckl & Farnham, LLP
303 Peachtree Street NE, Suite 3500
Atlanta, GA 30308
Attorneys for Defendants

Garrett W. Meader
Carrie B. Coleman
Drew Eckl & Farnham, LLP
777 Gloucester Street, Suite 305
Brunswick, GA 31520
Attorneys for Defendants

This 3ʳᵈ day of September, 2020.

FARRAR, HENNESY & TANNER, LLC

By: _____
John Andrew Tanner, Jr.
Attorney for the Plaintiffs
Georgia Bar No. 697598

P. O. Box 770
316 Madison Avenue North
Douglas, GA 31534-0770
Phone (912) 384-2287
Fax (912) 384-5602
Email - drew@fhtlawyers.com

Jeffrey H. Gross
Consultant
221 Wimberly Way Powder Springs, Georgia 30127

9-1-20

Mr. Drew Tanner
Attorney at Law
P.O. Box 770
316 Madison Avenue North
Douglas, Georgia 31534

Dear Mr. Tanner:

Below you will find my report in the matter of Connie Jo Morris and Johnny Morris v. Walmart Stores East LP, in compliance with Rule 27 requirements. This case involves a trip and fall which occurred on February 6, 2018 when plaintiff Connie Jo Morris returned a shopping cart to an area known as a Cart Corral, attempted to exit from the Cart Corral and tripped on a metal support base which runs the width of the corral near its entrance. This base will be described further in this report. The location of the store and Cart Corral is 1450 Bowens Mill Road Southeast, Douglas, Georgia.

As you are aware you have retained me to examine photographs produced of the Cart Corral. It is my understanding that the photographs I have received and reviewed were taken by the plaintiff's husband as well as yourself. You have represented to me the photographs are true and accurate representations which depict the Cart Corral where plaintiff fell and the subject base plate.

The findings and opinions contained in this report are subject to change or amendment upon review of new or additional information. I am not offering nor will I testify on the following issues; Causation, negligence, duty of care, visual acuity, human factors, and/or the behavior of the plaintiff in this case in any way.

**Findings**

I have been asked to assume the cart corral in question was manufactured by the National Cart Company. Further, this Cart Corral is consistent with at least four other examinations of Cart Corrals at Walmart stores in the Powder Springs, Hiram, and Douglasville areas of Georgia.

Based on the photographs provided, the base plate runs the width of the front of the cart corral. Further, the base plate was damaged in such a fashion as to cause it not to be able to sit flush upon the surface of the parking lot.

The parking lot surface appears to be constructed of asphalt and it is a normal aged asphalt color shaded to black. The metal strap is a normal unfinished metal color.
The photographs provided show a consistent gap between the bottom of the base plate and the surface of the parking lot. Of particular interest is an enlarged photograph of the strap showing a

ruler placed in front of the raised portion of the strap and an enlarged inch overlay added to the picture for clarity of measurements. This photograph remains a true and accurate representation of what it purports to depict. The base plate is one quarter (1/4) inch thick. The space between the bottom of the base plate and the surface of the parking lot is 3/8th of an inch. All measurements should be considered accurate to within $1/32^{nd}$ of an inch. The above measurements show that the total height from the surface of the parking lot to the top of the metal baseplate is $5/8^{th}$ of an inch.

## Methodology

The methodology used to determine the height of the base plate was accomplished by photographing while measuring it with a ruler and adding an inch overlay in the picture which more clearly depicts the measurements. Also, the thickness of base plate used in the subject cart corral was manufactured by National Cart and is known to be 1/4-inch in thickness.

## Standards

The American Society of Testing and Materials (ASTM) developed the Standard Practice for Safe Walking Surfaces: Designation F1637-13 which established standards and instruction for maintaining reasonably safe walking surfaces. "Walkway" is defined as walking surfaces constructed for pedestrian usage including floors, ramps, walks, sidewalks, parking lots and similar paved areas which may be reasonably foreseeable as pedestrian paths. "Foreseeable pedestrian paths" is defined as "any place where a pedestrian could reasonably be expected to walk."

Section 5.1.1 requires that "walkways" shall be stable, planar, flush, and even to the extent possible. Where "walkways" cannot be made flush and even, they shall conform to the requirements of 5.2 and 5.3.

Section 5.2.3 requires that changes in level between ¼ inch to ½ inch be beveled with a slope no greater than 1:2 (rise:run)

Section 5.2.4 requires that changes in level greater than ½ inch shall be transitioned by means of a ramp or stairway that complies with applicable building codes, regulations, standards, or ordinances, or all of these.

Section 6.1 requires that walking surface hardware within foreseeable paths shall be maintained flush with the surrounding surfaces and variances between levels shall be transitioned in accordance with Section 5.2.

## Opinions

1.      The National Cart Company (National Cart) publishes a "Safe use and maintenance Guide for Cart Corrals. This document was revised on May 2015. On Page 3 of this document under the heading Safety Inspection Checklist, National Cart states as part of its checklist "corral

sits flush on the ground and is firmly anchored to the parking lot." and "[t]here are no bent, cracked, sharp or protruding areas on the cart corral that may cause injury".

2.      Based on discovery information received to date, no information has been provided which indicates that Walmart conducted any routine safety inspection of the above-mentioned Cart Coral to identify potentially hazardous conditions consistent with the manufacturer's directions and guidance for conducting safety inspections.

3.      Had Walmart conducted inspections consistent with the directions and guidance from the manufacturer, National Cart, more likely than not Walmart would have found the defective and potentially hazardous condition which created a trip hazard.

        The basis for this opinion is as follows: the photographs taken which accurately depict the condition of the cart corral; the cart corral manufacturer's direction and guidance for conducting an inspection of the cart corrals; and the standards derived from the American Society of Testing and Materials "ASTM" Standard Practice for Safe Walking Surfaces F1637-13. This standard and its relevant parts are included with this report.

4.      The condition of the base plate, as photographed and described above, is a trip hazard. The basis for this opinion is my 40 plus years' of experience in safety, security and loss prevention. My CV is attached.   Additionally, I have attached my job description from my latest employer, Marriott Corporation, for whom I was the area director of loss prevention for Marriott Hotels and Resorts for ten (10) years. As such, I am familiar with walking surface trip hazards. Additionally, the National Fire Prevention Association Means of Egress Section, the International Building Code with Georgia Amendments, Means of Egress Section and the Georgia ADA "Americans With Disabilities Act," all recognize that abrupt changes in the elevation of the walking surface which exceed 1/4 of an inch are not permissible and must be treated in a fashion that allows it to be beveled to a geometry of 1 and 2 rise and run. This did not occur in the case of this particular base plate.

5.

**Rule 27 Compliance**

I have given a complete statement of all opinions that I will express and the basis and the reasons for them, to the extent I can given the state of discovery.

The facts and data considered by me in forming these opinions are listed. And include the reading of a ruler as well as addition and subtraction math.

My qualifications including a list of all depositions given over a period of 20 years versus the required 4 years are attached.

I have been compensated at the rate of $200.00 per hour in this case.

End of report

Jeffrey H. Gross

JGross_000039

# PHOTOGRAPHS











JGross_000045







JGross_000048

# ASTM F1637-13

This international standard was developed in accordance with internationally recognized principles on standardization established in the Decision on Principles for the Development of International Standards, Guides and Recommendations issued by the World Trade Organization Technical Barriers to Trade (TBT) Committee.



**Designation: F1637 – 13**

An American National Standard

# Standard Practice for
# Safe Walking Surfaces[1]

This standard is issued under the fixed designation F1637; the number immediately following the designation indicates the year of original adoption or, in the case of revision, the year of last revision. A number in parentheses indicates the year of last reapproval. A superscript epsilon (ε) indicates an editorial change since the last revision or reapproval.

## 1. Scope

1.1 This practice covers design and construction guidelines and minimum maintenance criteria for new and existing buildings and structures. This practice is intended to provide reasonably safe walking surfaces for pedestrians wearing ordinary footwear. These guidelines may not be adequate for those with certain mobility impairments.

1.2 Conformance with this practice will not alleviate all hazards; however, conformance will reduce certain pedestrian risks.

1.3 The values stated in inch-pound units are to be regarded as standard. The values given in parentheses are mathematical conversions to SI units that are provided for information only and are not considered standard.

*1.4 This standard does not purport to address all of the safety concerns, if any, associated with its use. It is the responsibility of the user of this standard to establish appropriate safety and health practices and determine the applicability of regulatory limitations prior to use.*

## 2. Referenced Documents

2.1 *ASTM Standards:*[2]
F1646 Terminology Relating to Safety and Traction for Footwear

## 3. Terminology

3.1 See Terminology F1646 for the following terms used in this practice:
3.1.1 Bollard,
3.1.2 Carpet,
3.1.3 Cross slope,
3.1.4 Element,
3.1.5 Fair,

3.1.6 Footwear,
3.1.7 Foreseeable pedestrian path,
3.1.8 Planar,
3.1.9 Ramp,
3.1.10 Sidewalk,
3.1.11 Slip resistance,
3.1.12 Slip resistant,
3.1.13 Walkway.
3.1.14 Walkway surface hardware, and

## 4. Significance and Use

4.1 This practice addresses elements along and in walkways including floors and walkway surfaces, sidewalks, short flight stairs, gratings, wheel stops, and speed bumps. Swimming pools, bath tubs, showers, natural walks, and unimproved paths are beyond the scope of this practice.

## 5. Walkway Surfaces

5.1 *General:*
5.1.1 Walkways shall be stable, planar, flush, and even to the extent possible. Where walkways cannot be made flush and even, they shall conform to the requirements of 5.2 and 5.3.
5.1.2 Walkway surfaces for pedestrians shall be capable of safely sustaining intended loads.
5.1.3 Walkway surfaces shall be slip resistant under expected environmental conditions and use. Painted walkways shall contain an abrasive additive, cross cut grooving, texturing or other appropriate means to render the surface slip resistant where wet conditions may be reasonably foreseeable.
5.1.4 Interior walkways that are not slip resistant when wet shall be maintained dry during periods of pedestrian use.

5.2 *Walkway Changes in Level:*
5.2.1 Adjoining walkway surfaces shall be made flush and fair, whenever possible and for new construction and existing facilities to the extent practicable.
5.2.2 Changes in levels up to ¼ in. (6 mm) may be vertical and without edge treatment. (See Fig. 1.)
5.2.3 Changes in levels between ¼ and ½ in. (6 and 12 mm) shall be beveled with a slope no greater than 1:2 (rise:run).
5.2.4 Changes in levels greater than ½ in. (12 mm) shall be transitioned by means of a ramp or stairway that complies with applicable building codes, regulations, standards, or ordinances, or all of these.

---

[1] This practice is under the jurisdiction of ASTM Committee F13 on Pedestrian/ Walkway Safety and Footwear and is the direct responsibility of Subcommittee F13.50 on Walkway Surfaces.
Current edition approved Aug. 1, 2013. Published August 2013. Originally approved in 1995. Last previous edition approved in 2010 as F1637 – 10. DOI: 10.1520/F1637-13.
[2] For referenced ASTM standards, visit the ASTM website, www.astm.org, or contact ASTM Customer Service at service@astm.org. For *Annual Book of ASTM Standards* volume information, refer to the standard's Document Summary page on the ASTM website.

Copyright © ASTM International, 100 Barr Harbor Drive, PO Box C700, West Conshohocken, PA 19428-2959. United States

Copyright by ASTM Int'l (all rights reserved); Sun Apr 9 10:46:55 EDT 2017
Downloaded/printed by
Jeffrey Gross (none) pursuant to License Agreement. No further reproductions authorized.

F1637 − 13



**FIG. 1  Changes in Levels up to a Maximum of ¼ in. (6 mm)**

5.3 *Carpet:*

5.3.1 Carpet shall be maintained so as not to create pedestrian hazard. Carpet shall be firmly secured and seams tightly maintained. Carpet shall not have loose or frayed edges, unsecured seams, worn areas, holes, wrinkles or other hazards that may cause trip occurrence.

5.3.2 Carpet on floor surfaces shall be routinely inspected. Periodic restretching may become necessary. Periodic inspection is particularly important at step nosing edges.

5.3.3 Carpet and carpet trim (as measured when compressed) shall meet the transition requirements of 5.2.

5.3.4 Shag-type carpet shall not be used on stair treads. Carpeting should be firmly secured onto the tread and around the nosing.

5.4 *Mats and Runners:*

5.4.1 Mats, runners, or other means of ensuring that building entrances and interior walkways are kept dry shall be provided, as needed, during inclement weather. Replacement of mats or runners may be necessary when they become saturated.

5.4.2 Building entrances shall be provided with mats or runners, or other means to help remove foreign particles and other contaminants from the bottom of pedestrian footwear. Mats should be provided to minimize foreign particles, that may become dangerous to pedestrians particularly on hard smooth floors, from being tracked on floors.

5.4.3 Mats or runners should be provided at other wet or contaminated locations, particularly at known transitions from dry locations. Mats at building entrances also may be used to control the spread of precipitation onto floor surfaces, reducing the likelihood of the floors becoming slippery.

5.4.4 Mats shall be of sufficient design, area, and placement to control tracking of contaminants into buildings. Safe practice requires that mats be installed and maintained to avoid tracking water off the last mat onto floor surfaces.

5.4.5 Mats, runners, and area rugs shall be provided with safe transition from adjacent surfaces and shall be fixed in place or provided with slip resistant backing.

5.4.6 Mats, runners, and area rugs shall be maintained so as not to create pedestrian hazards. Mats, runners, and area rugs shall not have loose or frayed edges, worn areas, holes, wrinkles, or other hazards that may cause trip occurrences.

5.5 *Illumination:*

5.5.1 Minimum walkway illumination shall be governed by the requirements of local codes and ordinances or, in their absence, by the recommendations set forth by the Illuminating Engineering Society of North America (IES) (Application and Reference Volumes).

5.5.2 Illumination shall be designed to be glare free.

5.5.3 Illumination shall be designed to avoid casting of obscuring shadows on walkways, including shadows on stairs that may be cast by users.

5.5.4 Interior and exterior pedestrian use areas, including parking lots, shall be properly illuminated during periods when pedestrians may be present.

5.6 *Headroom*—A minimum headroom clearance of 6 ft 8 in. (2.03 m), measured from the walkway surface, shall be provided above all parts of the walkway. Where such clearance is not provided in existing structures, the low clearance portions of the walkway shall be safely padded, marked with safety contrast color coding and posted with appropriate warning signs.

5.7 *Exterior Walkways:*

5.7.1 Exterior walkways shall be maintained so as to provide safe walking conditions.

5.7.1.1 Exterior walkways shall be slip resistant.

5.7.1.2 Exterior walkway conditions that may be considered substandard and in need of repair include conditions in which the pavement is broken, depressed, raised, undermined, slippery, uneven, or cracked to the extent that pieces may be readily removed.

5.7.2 Exterior walkways shall be repaired or replaced where there is an abrupt variation in elevation between surfaces. Vertical displacements in exterior walkways shall be transitioned in accordance with 5.2.

5.7.3 Edges of sidewalk joints shall be rounded.

## 6. Walking Surface Hardware

6.1 Walking surface hardware within foreseeable pedestrian paths shall be maintained flush with the surrounding surfaces; variances between levels shall be transitioned in accordance with 5.2.

6.2 Walking surface hardware within foreseeable pedestrian paths shall be maintained slip resistant.

6.3 Walking surface hardware shall be installed and maintained so as to be stable under reasonable foreseeable loading.

## 7. Stairs

7.1 *General:*

7.1.1 Stairways with "distracting" forward or side views shall be avoided. A "distracting" view is one which can attract the stair user's attention, (for example, advertisements, store displays), thus distracting the stair user.

7.1.2 Step nosings shall be readily discernible, slip resistant, and adequately demarcated. Random, pictorial, floral, or geometric designs are examples of design elements that can camouflage a step nosing.

7.1.3 Doors shall not open over stairs.

7.1.4 Structure (reserved).

7.2 *Short Flight Stairs (Three or Fewer Risers):*

7.2.1 Short flight stairs shall be avoided where possible.

7.2.2 In situations where a short flight stair or single step transition exists or cannot be avoided, obvious visual cues shall be provided to facilitate improved step identification. Handrails, delineated nosing edges, tactile cues, warning signs, contrast in surface colors, and accent lighting are examples of some appropriate warning cues.

Copyright by ASTM Int'l (all rights reserved); Sun Apr  9 10:46:55 EDT 2017
Downloaded/printed by
Jeffrey Gross (none) pursuant to License Agreement. No further reproductions authorized.

2

JGross_000051

F1637 – 13

## 8. Speed Bumps

8.1 Design to avoid the use of speed bumps.

8.2 All speed bumps which are in foreseeable pedestrian paths shall comply with 5.2 (walkway changes in level).

8.3 Existing speed bumps, that do not conform to 5.2, shall be clearly marked with safety color coding to contrast with surroundings. Painted speed bumps shall be slip resistant. Pedestrian **CAUTION** signs are recommended.

## 9. Wheel Stops

9.1 Parking lots should be designed to avoid the use of wheel stops.

9.2 Wheel stops shall not be placed in pedestrian walkways or foreseeable pedestrian paths.

9.3 Wheel stops shall be in contrast with their surroundings.

9.4 Wheel stops shall be no longer than 6 ft (1.83 m) and shall be placed in the center of parking stalls. The minimum width of pedestrian passage between wheel stops shall be 3 ft (0.91 m).

9.5 The top of wheel stops shall not exceed 6.5 in. (165 mm) in height above the parking lot surface.

9.6 Adequate illumination shall be maintained at wheel stops as governed by the requirements of local codes and ordinances or, in their absence, by the recommendations set forth by the Illuminating Engineering Society of North America (IES-Application and Reference Volumes).

9.7 Bollards, not less than 3 ft 6 in. (1.07 m) height, may be placed in the center of parking stalls as an alternative to wheel stops. Bollards should be appropriately marked to enhance visibility.

## 10. Gratings

10.1 Gratings used in public areas should be located outside of pedestrian walkways.

10.2 Gratings located in foreseeable pedestrian walkways shall not have openings wider than ½ in. (13 mm) in the direction of predominant travel.

10.2.1 *Exemption*—The requirements of 10.2 do not apply in areas where footwear worn is controlled (for example, industrial areas).

10.3 Gratings with elongated openings shall be placed with the long dimension perpendicular to the direction of predominant travel.

10.4 Gratings shall be maintained slip resistant.

## 11. Warnings

11.1 The use of visual cues such as warnings, accent lighting, handrails, contrast painting, and other cues to improve the safety of walkway transitions are recognized as effective controls in some applications. However, such cues or warnings do not necessarily negate the need for safe design and construction.

11.2 When relying on applications of color as a warning, provide colors and patterns that provide conspicuous markings for the conditions being delineated, their surroundings, and the environment in which they will be viewed by users. Bright yellow is a commonly used color for alerting users of the presence of certain walkway conditions. When properly applied and maintained, other colors can also provide effective warnings.

## 12. Keywords

12.1 carpet; floors; gratings; mats; runners; sidewalks; short flight stairs; slip resistance; speed bump; stairs; walkway; wheel stop

*ASTM International takes no position respecting the validity of any patent rights asserted in connection with any item mentioned in this standard. Users of this standard are expressly advised that determination of the validity of any such patent rights, and the risk of infringement of such rights, are entirely their own responsibility.*

*This standard is subject to revision at any time by the responsible technical committee and must be reviewed every five years and if not revised, either reapproved or withdrawn. Your comments are invited either for revision of this standard or for additional standards and should be addressed to ASTM International Headquarters. Your comments will receive careful consideration at a meeting of the responsible technical committee, which you may attend. If you feel that your comments have not received a fair hearing you should make your views known to the ASTM Committee on Standards, at the address shown below.*

*This standard is copyrighted by ASTM International, 100 Barr Harbor Drive, PO Box C700, West Conshohocken, PA 19428-2959, United States. Individual reprints (single or multiple copies) of this standard may be obtained by contacting ASTM at the above address or at 610-832-9585 (phone), 610-832-9555 (fax), or service@astm.org (e-mail); or through the ASTM website (www.astm.org). Permission rights to photocopy the standard may also be secured from the Copyright Clearance Center, 222 Rosewood Drive, Danvers, MA 01923, Tel: (978) 646-2600; http://www.copyright.com/*

# Jeff Gross CV

Jeffrey H. Gross
Consultant; Premises liability.
221 Wimberly Way
Powder Springs, Georgia 30127
Phone: 770-942-8499

2019

Professional Profile:   Consultant and with over 39 years of experience in premises security, negligence, safety and loss prevention. ICLE, Institute of Continuing Legal Education in Georgia presenter 19 years.

### 2000 -Present. Self-Employed Premises Liability Consultant.

Services provided to plaintiff, defense and insurance interests.
Services include: Site inspections for safe walking surfaces, including sidewalks, walkways, short flight stairs, ramps, wheel stops, handrails, guardrails, means of egress, wet floor signs, failure to warn and matting.

Site inspections for security and crime related incidents occurring in Hotels / Motels, Office buildings, Apartments, Parking Garages, Parking Lots, Perimeter Security, Physical Security, CPTED, Locking Systems and Key Control, Security Management including CCTV, Alarms and Security Officers.

Other services include: Case Preparation, Mediation Presentations, Photography, Light Level Testing, Exemplars, addressing issues concerning Codes and Standards, Depositions and Trial Testimony.

**March 1991 -2000**

**Marriott International / Sodexho Marriott Services**
**Gaithersburg, Maryland**
**Area Loss Prevention Manager**

Responsibilities included security/loss prevention management to reduce or
eliminate risks of personal injury and property damage arising from:
Third party criminal acts
Employee assaults/thefts
Inadequate safety training
Property or static defects (lighting, fencing, floors, ramps)
Inadequate crowd control
Food-borne illness
Fire/emergency evacuation

Managed the accident and fire prevention programs for 350 Marriott and
Sodexho Marriott accounts in seven Southeastern states.
Identified unsafe conditions
Determined injury causative factors and facilitated appropriate remedial
actions
Communicated injury prevention/fire prevention information to regional
vice presidents, district managers and account managers within the
assigned territory
Enforced compliance with Marriott International/ Sodexho Marriott,
federal, state and local codes and standards involving the safety of
employees and public
Served as expert witness in civil litigation in multiple venues

**JANUARY 1988 – MARCH 1991**

**MARRIOTT INTERNATIONAL/MARRIOTT HOTELS AND RESORTS**
**Bethesda, Maryland**
**Area Director of Loss Prevention**

Managed the Loss Prevention and Security Program of the Hotel Division
for six Southeastern states.
Identified and appraised injury producing conditions and practices
Conducted injury prevention audits
Collected and analyzed information involving people, materials, equipment
and environment to determine causes of injuries to employees, guests and
auto accidents
Reviewed all security incident reports involving guests and visitors so that
major incidents were identified and critical decisions made to reduce future

injuries
Assisted with directing the Accident Prevention Program on hotel
properties
Corporate resource for civil and criminal law as it pertains to the hotel
industry

## AREA DIRECTOR OF LOSS PREVENTION

### Major Functions from Position Description

1. Manage the lost prevention program of the hotel division for a
specific area of the country using specialized knowledge in the physical
and social sciences field to Identify conditions which erode profits or have
the potential to do so.

2. Determine causative factors and recommend appropriate
remedial action.

3. Cause compliance with the division of lost prevention policies,
all federal, state and local codes, and any standards involving the safety
and security of guests and employees.

4. To direct the lost prevention department at the assigned based
hotel in an efficient and professional manner to ensure the safety and
security of the hotel, its guests, employees and property.

### Major Responsibilities

1. Identification and appraisal of accidents, lost-producing
conditions, and practices.

2. Collect and analyze information involving people, materials,
equipment and environment, to determine causes of losses for employees,
guests, and auto accidents.

3. Coordinate the review of all security incidents involving guest
injuries and losses of personal property so that major incidents are
identified and critical decisions made to minimize liability.

4. Act as a resource to regional vice president and interface with
regional team to identify, evaluate, and minimize loss-producing areas.

5. Conduct or facilitate the completion of accident prevention
audits at each property to assist in identifying loss-producing occurrences
and practices.

6. Audit property security management procedures to ensure that
reasonable care is being provided and that asset losses are reduced through

effective internal theft procedures.

7. Ensure that the ergonomics program is functional at each property and include pre-employment screening.

8. Develop the accident prevention and loss control methods and procedures and programs.

9. Develop policies, programs, procedures, and standards in safety and security to ensure an effective loss control program in the division.

10. Ensure that an emergency evacuation plan exists upon each property.

11. Act as an advisor and resource to the hotels in lost prevention matters involving the physical plant and other areas of technical, operational, and personal safety.

12. Ensure the establishment of accident prevention and security management plans and actions for new hotels.

13. Provide expertise and participate in the recruiting, selection, training, and placement of security directors within the hotel division.

14. Conduct and coordinate accident prevention training, physical hazard punch-outs, and facilitate the total safety program start-up in new hotels.

15. Ensure that essential safety and health requirements are met in all purchasing and contracting where problems are identified for product safety. This may include the research of intended and potential uses of products as well as the composition and construction of materials.

16. Ensure that Marriott design equipment, safety and fire standards criteria are met in all safety and security plan reviews for new construction.

17. Provide construction site security guidance and coordinate security management plans and actions as needed or directed by the regional vice president.

18. Facilitate and assist the lost prevention training and education at target hotels to assist in developing property managers' lost prevention skills. Monitor the lost prevention on property training system at all other hotels.

19. Allocate a portion of time to effectively oversee the

direct lost prevention program at the base property.

**1986-1988 MARRIOTT HOTELS – ATLANTA MARRIOTT MARQUIS**
**Atlanta, Georgia**
*Director of Loss Prevention*

Managed the Loss Prevention program and Security Department consisting
of 35 Loss Prevention Officers, Lost and Found Department, Employee
Clinic of 4 nurses and the Shipping and Receiving Department for the 1470
room Atlanta Marriott Marquis.
Developed and maintained local loss prevention standard operating
procedures in conformance with hotel division standards and tailored to the
specific needs of the property, including major conventions
Established written security procedures for use in the event of emergencies
resulting from fire, power failure, water and gas ruptures, and bomb threats
Established procedures for reducing and eliminating criminal conduct in
the areas of trespassing, theft, robbery, prostitution and assault
Reviewed all security incident reports involving guests and visitors so that
major incidents were identified and critical decisions made to reduce or
eliminate future injuries
Assisted with directing the Accident Prevention Program on hotel
properties
Corporate resource for civil and criminal law as it pertains to the hotel
industry

**1985 -1986 MARRIOTT HOTELS – DOWNTOWN MARRIOTT HOTEL**
**Atlanta, Georgia**
*Director of Loss Prevention*

**1982- 1985 SANTA CLARA MARRIOTT HOTEL**
**Santa Clara, California**
*Director of Security*

**1980 – 1982 MARRIOTT HOTELS – OAKBROOK HOTEL**
*Director of Security*

Education:

Des Moines Area Community College
Des Moines, Iowa
1976 --- 1978
*Associates of Arts in Industrial Safety and Security*

American Society of Safety Engineers
Des Plaines, Illinois
1998
*Certificate in Safety Management*


Training:

Attended two to three industry-related seminars annually for 20 years.


Professional References and Case List provided upon request.

# Jeff Gross Cases

JGross_000060

**JEFFREY H. GROSS**
**221 WIMBERLEY WAY**
**POWDER SPRINGS, GEORGIA 30127**

LIST OF CASES

State Court of Fulton County, Georgia
No. 99CV03758B
*Willie Woodcox v. Sadisco of Atlanta*

State Court of Fulton County, Georgia
No. 98VS0137516F
*Peggy Dean v. Chevron USA Incorporation and Cascade Inc.*

State Court of Fulton County, Georgia
No. 99VS000541C
*Larry Rosser v. SAI Enterprises Inc.*

State Court of Muskogee County, Georgia
No. SC000CV1789
*Wendy Leanza v. McDonald Oil Company Incorporated*

State Court of Cobb County, Georgia
No. 000A15775
*Jane Doe Young v. Mulkey Development Investment Corporation*

State Court of Fulton County, Georgia
No. 99BS148809J
*Nancy Miller v. Eckerd Corporation*

State Court of Fulton County, Georgia
No. 101CV0787JEC
*Kathleen Chester v. Real Estate Property Trust and CPI Incorporated*

State Court of Fulton County, Georgia
No. 03VS048025D
*Donald Eubanks v. Homewood Suites*

State Court of Cherokee County, Georgia
No. 02SC0638
*Robert Sparks v. Waffle House*

State Court of Cobb County, Georgia
No. 02A11531
*Linda Reid v. Hilton Hotels*

State Court of DeKalb County, Georgia
No. 99A578264
     *Smith v. EQR North Hill LLC Equity Properties*

State Court of Bryan County, Georgia
No. 2004SV003
*Brenda Curtis v. Scottish Inns*

State Court of Fulton County, Georgia
No. GLVS013235G
*Arthur Fulner v. City of Atlanta*

United States District Court for the Northern District of Georgia
No. CAFN101-CV-0708
*Kathleen Chester v. Retail Property Trust*

United States District Court of South Carolina, Beaufort Division
No. 903-0064-23
*Edna Hammer v. Vista Hotels Incorporated*

State Court of Fulton County, Georgia
No. 05VS08013E
*Joan Fisher v. Holcomb Woods Village LLC*

State Court of Bibb County, Georgia
No. 02CV17325
*Amanda Bryant v. Chevy's Incorporated*

State Court of Fulton County, Georgia
No. 0203717-G
*Fred Wozniak v. Landmark Christian School*

State Court of Cobb County, Georgia
No. 04-A-10712-2
*Ellsworth v. Cracker Barrel Incorporated*

State Court of DeKalb County, Georgia
No. 04-A-20712-2
*Dansereau v. Laurel Heights LP*

Superior Court of White County, Georgia
No. 05-CV-0096-DV
*Mina Klass v. D.G. and Associates Properties LLC*

United States District Court for the Northern District of Georgia
No. 104-CV-0295-WDH
*Michael Becnel v. TA Operating Corporation*

Superior Court of Bartow County, Georgia
No. 05-CV-2343
*Ruth Turner v. Days Inn Worldwide Incorporated*

State Court of Fulton County, Georgia
No. 2006-EV-000265-Y
*Eddie Flint v. Sun Trust Banks Incorporated*

State Court of Cobb County, Georgia
No. 06A7771-5
*Marcel Bloodworth v. Summit Creek Incorporated*

United States District, Northern District of Georgia, Atlanta Division
No. 106-CV-3150JFK
*Marina Hinchey v. Eckerd Corporation*

State Court of Bibb County, Georgia
No. 05CV28273
*Koppe v. Thompson Hospitality*

Circuit Court of Kanawha County, West Virginia
No. 05-C-1192
*Amy Workman v. Kanawha Mall*

State Court of Richmond County, Georgia
No. 2006-RCCV-403
*Fairway Ford Incorporated v. Green and Purdy*

State Court of Fulton County, Georgia
No. 2007EV003390C
*Kathy Witchey v. Georgia Aquarium*

State Court of Houston County, Georgia
No. 2008V39539
*Delian Lann v. Houston Healthcare*

State Court of Holton County, Georgia
No. 2007EV001691D
*Shirley Watts v. Strand Industrial Incorporated*

Superior Court of Richmond County, Georgia
No. 2006RCCV-213
*Janet Holmes v. Augusta Inn*

Superior Court of Fulton County, Georgia
No. 2004CV83953
*Samona Edery v. MARTA*

State Court of Gwinnett County, Georgia
No. 06C-10757-5
*Dana Sams v. HTH Building Services*

Circuit Court of Hamilton County, Tennessee at Chattanooga
No. 06C1055
*Linda Zachery v. Ruby Falls Incorporated*

State Court of Richmond County, Georgia
No. 2006RCCV00597
*Dennis Spriggs v. Atlanta Golf Limited*

United States District Court of Georgia
No. CV-1792-TCB
*Depofi v. Dyncorp*

State Court of Gwinnett County, Georgia
*Billy Usry v. Green*

Court of Common Pleas, Sixth Judicial Circuit State Court of South Carolina
No. 2007-CP29593
*Roddy v. Walmart Stores East*

State Court of Fulton County, Georgia
No. 2006EV001587J
*Softic v. Metro Atlanta Properties*

Superior Court of Cobb County, Georgia
No. 09-1-2374-5
*Thomas v. Quick Trip Corporation*

United States District Court, Middle District of Georgia
No. 508CV393
*McBride v. Bank of America*

State Court of Fulton County, Georgia
No. 09EV006917D
*Williams v. TSA Stores*

Superior Court of Fulton County, Georgia
No. 2009CV171697
*Spicer v. Regal Cinemas*

United States District Court for the Northern District of Georgia
No. 110-CV-00045WBH
*Nairobi Couch v. Red Roof Inns Incorporated*

Superior Court of Fulton County, Georgia
No. 2009CV162404
*Christopher Cox v. Colony Regency Partners*

State Court of Fulton County, Georgia
No. _____
*Victoria Trunk v. MARTA*

Superior Court of Fulton County, Georgia
No. 2009CV171449
*Seabrum v. Checkmax Incorporated and Halpren Enterprises Incorporated*

State Court of DeKalb County, Georgia
No. 09A045431-3
*Kimberly Board v. HMI Property Solutions*

State Court of Clayton County, Georgia
No. 09CV03410B
*Harold Gilliam, Jr. v. Irish Bread Pub/Charles Edward Brown*

Superior Court of Laurens County, Georgia
No. 2009GC-1188
*Sell v. Strickland*

State Court of South Carolina, County of Richland
No. 09CP-40-08244
*Valerie Bender v. L&M Enterprise Solutions, d/b/a 360 Sports Grill*

State Court of DeKalb County, Georgia
No. 10A32705-7
*James Loynes v. Elite at Victory Landings*

Superior Court of Fulton County, Georgia
No. 2010CV194089
*Maria Singleton v. Gel Ashley Mill d/b/a Ashley Mill Apartments*

State Court of Fulton County, Georgia
No. 10EV010551A
*Patrick Whaley v. Williams Residential Management*

Superior Court of Gwinnett County, Georgia
No. 2010CV189478
*Linda Hawkins v. Arby's Restaurant Group*

State Court of DeKalb County, Georgia
No. 10A24772-2
*Lawrence Coleman v. Imperial Capital Bank*

State Court of DeKalb County, Georgia
No. 10A32103-3
*Krista Surovec v. El Ad Dunwoody LLC*

State Court of Gwinnett County, Georgia
No. 10-C-10945-56
*Israel Recinos v. Mitchell Convenience*

State Court of DeKalb County, Georgia
No. 11A38462-1
*Wendy Mays v. KCM Associates*

State Court of Fulton County, Georgia
No. 11EV012725
*Threatt v. W Hotel Management Incorporated*

State Court of Fulton County, Georgia
No. 11EV-012483H
*Emma McClarty v. Trigild Incorporated, d/b/a Mosley Hotel*

State Court of Cobb County, Georgia
No. 11-A4000-1
*Joanne Hopmeier v. Central NP East Lake Pavilions*

State Court of Athens Clark County, Georgia
No. ST11-COVER-0676
*Linda Valley v. Kmart Corporation*

State Court of Fulton County, Georgia
No. 11EV013640Y
*Jacqueline Woods v. CB Richard Ellis, Inc.*

State Court of Cobb County, Georgia
No. 2011A-41642
*Lien Le Plaintiff v. Walmart Stores East*

State Court of Fulton County, Georgia
No. 11EV011973H
*Nancy Kabrich v. Simon Property*

State Court of Liberty County, Georgia
No. 11SV243
*Allison Rorro v. Walmart Stores East LP*

United States District Court, Southern District of Indiana, Indianapolis Division
No. 1-12-CV-0328-WTL-DML
*Angelo Houston v. Hyatt Corporation*

State Court of DeKalb County, Georgia
No. 11-A-39001-6
*Leticia Aranda v. Rosebriar Partnership*

State Court for the County of Cherokee, Georgia
No. 11SC-0584CJ
*Banks v. LLBJ, LLC d/b/a Hamilton Inn*

State Court of Cobb County, Georgia
No. 2012A4077-7
*Phyllis Pucci v. Bartow Animal Hospital Incorporated*

State Court of Cobb County, Georgia
No. 2012A1577-3
*McCoy v. Well Star Health System*

Superior Court of Gwinnett County, Georgia
No. 12-A-04867-10
*Cheryl Payne v. Mitchell and Sons Moving and Storage Incorporated*

State Court of Fulton County, Georgia
No. 12EVD-015484H
*Noelle Green v. Linear Parking*

State Court of Fulton County, Georgia
No. 12EV015314E
*Brian Kingsbury v. Simpson Holding*

State Court of Fulton County, Georgia
No. 12EV014442-G
*Annie Ruth Wilson v. Marietta E&A LLC*

United States District Court for the Middle District of Alabama Northern Division
No. 2-12-CV-801MEF
*Alice Kilic v. ESA Portfolio LLC*

United States District Court, Middle District of Georgia, Macon Division
No. 512-CV-234
*Joyce R. Nichols v. Wilcohess LLC*

Superior Court of Fulton County, Georgia
No. 2012CV223621
*Lucinda Harmon v. Amerimar Enterprises Incorporated*

Superior Court of Gwinnett County, Georgia
No. 13-A-10492-2
*Nancy Kamay v. Checkers Drive-In Restaurant Incorporated*

State Court of Fulton County, Georgia
No. 13EV018830E
*Damaris Ravero v. Simon Properties and Target Corporation*

United States District Court, Southern District
No. 514-CV-00053-LGW-JEG
*Owen v. Walmart*

State Court of Fulton Country, Georgia
No.14EV001976J
*Snell v Misty Amber & Lincoln Management*

Superior Court of Butts Country, Georgia
No. 15-V-8 (F)
*Brandon v Beverly's Nursery*

United States District Court
For the Northern District of Georgia
No. 1:3-CV-002026-TWT
*Houton vs Publics Super Markets, INC.*

Superior Court of Fulton Country, Georgia.
No. 2014 CV 242510
*George vs Hercules Real Estate Services.*

State Court of DeKalb County, Georgia.
No. 13A495142
*Syribeys vs Whole Foods Market Group.*

United States District Court
South Carolina Columbia Division
No.3:12-CV-2022-MBS
*Moise vs Allied Barton & Columbiana Center.*

State Court of Rockland County, Georgia.
No.214-SV-1111
*Bailey vs Vineyard Industries*

United States District Court
Middle district of Georgia, Macon Division
*Caldwell vs Wal-Mart Stores East.*
No. -CV-211-MTT

State Court of DeKalb County, Georgia.
No. 14A52002-2
*Fadumo Hassen vs Olde Plantation Apartments.*

State Court of Gwinnett Country, Georgia
*Adrienne Smith vs Avis Rent A Car System.*
No. 14-C-00789-4

State Court of DeKalb County, Georgia.
*Melody Clark vs DeKalb Medical Center.*
No. 144A5342-6

State Court Houston County, Georgia.
*Rao Pinnamaneni vs Vinayak, LLC*
No. 15SV115JTC

State Court of Fulton County, Georgia.
Abuqasem vs East Andrews LLC

United States District Court
For the Northern District of Georgia.
*Robin Houston vs Publix Super Markets.*
No 1:13-CV-0002026-TWT

State Court of Henry County, Georgia.
*Rao vs Navika Capital Group.*
No. -SV-115JTC

State Court of Cobb County, Georgia.
Barbara McGlon vs Walton Communities.
*No.  14A2295*

State Court of DeKalb County, Georgia.
Darryl Burgess vs Edgewater Apts. LLC
*No. 15A56482E2*

State Court of Gwinnett County, Georgia.
Mireya Hardy.vs YP's Kani House
*No.12-C-02395-5*

State Court of Gwinnett County, Georgia.
Rebecca Knight vs Wal-Mart Stores.
*No. 15-C-03483-1*

State of South Carolina.
Mandinici vs Holiday Inn Express
Ninth Judicial Dist.
*No. 2016-CP-08-00645*

State Court of Gwinnett County. GA.
Tijerina vs Titan 2 LLC
*No.14-C-03663-1*

State Court of Gwinnett County. GA.
Lawton vs Costco
*No. 15C00857-6*

Superior Court of Butts County.GA.
Whitehead vs Six Oaks LLC
*No. 12V487(F)*

State Court of Fulton County. GA
Reich vs Amreit Fountain Oaks.
*No. 15EV001675*

State Court of DeKalb County. GA
Snow vs Stonecrest Mall.
*No 15A54185E6*


Superior Court of Chattooga County. GA
Jack Bond vs Patel / BJ's Foodmart.
*No.2016CA41292*

State Court of Fulton County. GA
Thornton Goss vs North Point Mall.
*No 14EV002506Y*


State Court of Glynn County, State of Georgia
Patricia Dever
v. Beon Manning
No. CV20170037

State Court of DeKalb County, State of Georgia
Darrell Burgess v. Edgewater Apartments Atlanta
No. 15A56482E2

United States District Court District of South Carolina Columbia Division
Laura Moise v. Allied Barton Security
No. 312-CV-2022-MVS

United States District Court for the Middle District of Georgia Macon Division
Tracy Suzanne Caldwell v. Walmart Stores East
No. 514-CV-211-MTT

State Court of Ware County, State of Georgia
Carrie Owen v. Walmart Stores East
No. 514V064

State Court of Gwinnett County, State of Georgia
Mireya Hardy v. YP's Kani, Incorporated
No. 12-C-02395-5

State Court of Gwinnett County, State of Georgia
Marilyn Dickstein v. Marshall's Incorporated TJX Companies
No. 12C-05224-2 ?

State Court of Henry County, State of Georgia
Pinnamaneni v. Shree Vinayak
No. 15SV115JTC

State Court of Fulton County, State of Georgia
Susan Green v. Peter Casey
16EV001100

State Court of Lowden County, State of Georgia
Myrtle Kelly v. Gornto Hospitalities, LLC
2016-SCV-325

State Court of Fulton County, State of Georgia
Laura Hallisy v. QTB Acquisition LLC dba On the Border
File number not available.

State Court of DeKalb County State of Georgia
Shirley Zachary v. Atrcorinth Northlake LLC
17A65462

State Court of Fulton County, State of Georgia
Jennifer Doggett v. Arena Operations LLC
Live Nation Worldwide LLC
17EV002555

United States District Court for the Middle District of Georgia, Valdosta Division
Patricia Baldree
v. the United States of America
7-18-CV-00062-WLS

United States District Court Middle District of Georgia, Macon Division
Tracy Suzanne Caldwell
v. Walmart Stores East
5-14-CV-211-MTT

Superior Court of Polk County
State of Georgia
Herschel Wright
v. Phil Smith
2017-cv-701M

United States District Court
Northern District of Georgia.
Joan Green
v. Petsmart
1:18-CV-02828-MLB

# Jeff Gross
# Prior Job
# Description

POSITION DESCRIPTION

DEPARTMENT NAME:        Loss Prevention
DEPARTMENT NUMBER:     921.15
POSITION TITLE:        Area Director of Loss Prevention
JOB CODE:
SALARY GRADE:          48
IMMEDIATE SUPERVISOR:  Property Resident Manager;
                       Division Director of Loss Prevention

I.  MAJOR FUNCTIONS

A.  Manage the Loss Prevention program of the Hotel Division for a specific area of the country using specialized knowledge in the physical and social science fields to:

1.  Identify conditions which erode profits or have the potential to do so.

2.  Determine causative factors and recommend appropriate remedial actions.

3.  Cause compliance with Division Loss Prevention policies, all Federal, State and local codes, and any standards involving the safety and security of guests and employees.

B.  To direct the Loss Prevention Department at the assigned base hotel in an efficient and professional manner to insure the safety and security of the hotel, its guests, employees and property.

II.  MAJOR RESPONSIBILITIES

A.  Identification and appraisal of accidents, loss producing conditions, and practices.

1.  Collect and analyze information involving people, materials, equipment and environment, to determine causes of losses from employee, guest, and auto accidents.

2.  Coordinate the review of all security incidents involving guest injuries and losses of personal property so that major incidents are identified and critical decisions made to minimize liability.

3.  Act as resource to Regional Vice President and interface with Regional Teams to identify, evaluate, and minimize loss producing areas.

4.  Conduct or facilitate the completion of Accident Prevention Audits at each property to assist in identifying loss producing conditions and practices.

5. Conduct on a routine basis physical safety inspections of new and existing properties to insure a safe environment, compliance with Division standards, and corrective actions.

6. Audit property security management procedures to insure that reasonable care is being provided and that asset losses are reduced through effective internal theft procedures.

7. Insure that the ergonomics program is functional at each property and includes pre-employment screening.

B. Development of Accident Prevention and Loss Control Methods, Procedures, and Programs.

1. Develop policies, programs, procedures, and standards in safety and security to insure an effective loss control program in the Division.

2. Insure that an Emergency Plan exists on each property.

3. Act as an advisor and resource to the hotels in Loss Prevention matters involving the physical plant and other areas of technical, operational, and personnel safety.

4. Insure the establishment of accident prevention and security management plans and actions for new hotels.

5. Provide expertise and participate in the recruiting, selection, training, and placement of security directors within the Hotel Division.

6. Conduct and coordinate Accident Prevention Training, Physical Hazard Punch-Outs, and facilitate the total safety program start-up in new hotels.

7. Insure that essential safety and health requirements are met in all purchasing and contracting where problems are identified for product safety. This may include research of the intended and potential uses of products as well as the composition and construction of materials.

8. Insure that Marriott Design Euipment, Safety and Fire Standards criteria are met in all safety and security plan reviews for new construction.

9. Provide construction site security guidance and coordinate security management plans and action as needed or directed by the Regional Vice President.

10. Facilitate and assist in Loss Prevention training and education at targeted hotels to assist in developing property managers' loss prevention skills. Monitor the Loss Prevention on property training system (OPTS) at all other hotels.

C. Allocate a portion of time to effectively oversee and direct the loss prevention program at the base property.

1.  establish and maintain a program to ensure equal and fair
    treatment for employees by:

 a.  counselling and discipling Security personnel when
  necessary
 b.  holding monthly meetings
 c.  making timely reviews of employees' performance
 d.  having an open door policy for airing complaints or
  suggestions
 e.  being available to discuss any problems

2.  Continually inspect and critique the performance of the Loss
    Prevention Department to establish and maintain a high level
    of professionalism.

3.  Maintain a close working relationship with other departments
    and their employees to ensure cooperation.

4.  Make the Loss Prevention Department available to all
    departments when they request or need our assistance.

5.  Emphasize within the department the necessity of good guest
    relations and aggressive hospitality.

6.  Assist with directing the Accident Prevention Program on the
    property.

7.  Maintain a professional liason with the local law enforcement
    agencies.

8.  Insure compliance with proper key control guidelines.

9.  Possess a working knowledge of civil and criminal law as it
    pertains to the hotel industry.

III.  COMMUNICATION OF LOSS PREVENTION INFORMATION TO THE HOTEL DIVISION
AND OTHER INTERESTED PARTIES.

 A.  Prepare field and office correspondence, analyses, and
 recommendations designed to control or eliminate hazards and
 losses; and, communicate these recommended controls, procedures,
 or programs to those having ultimate decision making
 responsibility.

 B.  Provide Loss Prevention information, direction, and guidance to
 regional team members to assist in carrying out their
 responsibilities.

 C.  Disseminate pertinent information related to security, safety
 legislation, claims litigation, OSHA, and Worker's Compensation.

 D.  Facilitate the claims management process by acting as a conduit
 and resource to the Regional Vice President and Regional Teams.

IV.  MEASUREMENT AND EVALUATION OF THE EFFECTIVENESS OF THE LOSS
PREVENTION PROGRAM.

A.   Analyze and evaluate all loss program frequencies and related data to detect potential problem areas, e.g.

    1.   Division Lost Time Frequency
    2.   Cost Percent of Sales
    3.   On-Time Reporting Frequency
    4.   Indemnity Frequency

B.   Analyze and evaluate guest liability frequencies and related data to detect potential problem areas, e.g.

    1.   Comprehensive General Liability Frequency
    2.   Cost Percent of Sales
    3.   Security Index

C.   Analyze and evaluate Assets Protection statistics and related data to detect potential problem areas of potential loss.

D.   Advise the Regional Vice Presidents on a period or as needed basis on the results of analyses and evaluations of all Loss Prevention data which reveal losses, trends, or areas of potential loss.