IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| CONNIE JO MORRIS; and JOHNNY MORRIS,<br><br>    Plaintiffs,<br><br>    v.<br><br>WAL-MART STORES EAST, LP; WAL-MART STORES EAST, LP, d/b/a WAL-MART SUPERCENTER #593; and WALMART, INC., f/k/a WAL-MART STORES, INC.,<br><br>    Defendants. | CIVIL ACTION NO.: 5:20-cv-32 |

**O R D E R**

This matter is before the Court on Defendants' Motion to Exclude Testimony of Jeffrey Gross.  Doc. 31.  For the reasons discussed below, I **GRANT** Defendants' Motion to Exclude.

BACKGROUND

This is a premises liability case, initially filed in Coffee County Superior Court and removed to this Court.  Doc. 1.  Plaintiffs allege Defendants negligently failed to inspect and maintain a shopping cart corral in a parking lot.  Doc. 1-1 at 9–10.  Specifically, Plaintiffs allege the metal bar (also described as a "strap" or "base plate") at the bottom of the shopping cart corral was raised above the asphalt.  Id. at 8.  Because of Defendants' failure to inspect and maintain the corral, Plaintiffs allege Ms. Morris fell in a Wal-Mart parking lot while returning her shopping cart.  Id.  At trial, Plaintiffs intend to rely on the testimony of expert Jeffrey Gross. In his expert report, doc. 26-8 at 6–9, Gross sets forth four opinions:

1. The National Cart Corral Company (National Cart) publishes a "Safe use and maintenance Guide for Cart Corrals." This document was revised on May 2015. On Page 3 of this document under the heading Safety Inspection Checklist, National Cart states as part of its checklist "corral sits flush on the ground and is firmly anchored to the parking lot[]" and "[t]here are no bent, cracked, sharp or protruding areas on the cart corral that may cause injury."

2. Based on discovery information received to date, no information has been provided which indicates Walmart conducted any routine safety inspection of the above-mentioned Cart Corral to identify potentially hazardous conditions consistent with the manufacturer's directions and guidance for conducting safety inspections.

3. Had Walmart conducted inspections consistent with the directions and guidance from the manufacturer, National Cart, more likely than not Walmart would have found the defective and potentially hazardous condition which created a trip hazard.

4. The condition of the base plate, as photographed and described above, is a trip hazard.

Defendants move to exclude Gross' testimony, arguing his expert opinions are in admissible because Gross is not qualified, his opinions are not sufficiently reliable, and the testimony is not helpful to the trier of fact under <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S 579 (1993), and Federal Rule of Evidence 702.  Doc. 31.

**DISCUSSION**

**I.    Legal Standard**

The United States Supreme Court's holding in <u>Daubert</u> and the text of Rule 702 require trial judges to serve as gatekeepers in determining the admissibility of expert testimony; however, any decision regarding admissibility is not a position on the strength or weight of the testimony.  Fed. R. Evid. 702; <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137, 141 (1999).  In this Circuit, courts routinely look to three elements to determine if an expert is qualified under

Daubert and Rule 702.  As the Eleventh Circuit Court of Appeals has stated, the elements for consideration are whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004) (citations omitted).  "[A]lthough there is some overlap among the inquiries into an expert's qualifications, the reliability of his proffered opinion and the helpfulness of that opinion, these are distinct concepts that courts and litigants must take care not to conflate."  Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd., 326 F.3d 1333, 1341 (11th Cir. 2003).  The trial court has broad latitude in evaluating each of these three factors.

As to qualifications, an expert may be qualified "by knowledge, skill, training, or education."  Hendrix ex rel. G.P. v. Evenflo Co., Inc., 609 F.3d 1183, 1193 (11th Cir. 2010).  The expert need not have experience precisely mirroring the case at bar in order to be qualified.  Maiz v. Virani, 253 F.3d 641, 665 (11th Cir. 2001).  However, where an expert does have experience directly applicable to an issue at bar, experience alone may provide a sufficient foundation for expert testimony.  Frazier, 387 F.3d at 1261.  As to reliability, courts look, when possible, to: (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community.  Daubert, 509 U.S. at 593–94.  However, these factors are not exhaustive, and "a federal court should consider any additional factors that may advance its Rule 702 analysis."  Quiet Tech., 326 F.3d at 1341.  At all times in this flexible inquiry, the court's focus

must be "solely on principles and methodology, not on the conclusions that they generate." Seamon v. Remington Arms Co., LLC, 813 F.3d 983, 988 (11th Cir. 2016) (citation omitted). Finally, as to the third Daubert factor, expert testimony is likely to assist the trier of fact to the extent that "it concerns matters beyond the understanding of the average lay person and logically advances a material aspect of the proponent's case." Kennedy v. Elec. Ins. Co., Case No. 4:18cv148, 2019 WL 2090776, at *5 (S.D. Ga. May 13, 2019) (citing Daubert, 509 U.S. at 591). Regarding this factor, the Court notes typical slip-and-fall negligence cases usually involve facts and issues that are well within the ordinary experience and understanding of the average lay person. Alzubaidi v. Wal-Mart Stores, Inc., Civ.A. No. 90-1891, 1991 WL 99423, at *1 (E.D. La. June 3, 1991); Scott v. Sears, Roebuck & Co., 789 F.2d 1052, 1055 (4th Cir. 1986); Coggon v. Fry's Electronics, Inc., Civil Action No. 1:17-CV-03189, 2019 WL 2137465, at *4 (N.D. Ga. Feb. 6, 2019).

"The burden of laying the proper foundation for the admission of the expert testimony is on the party offering the expert, and the admissibility must be shown by a preponderance of the evidence." Allison v. McGhan Med. Corp., 184 F.3d 1300, 1306 (11th Cir. 1999).  However, "it is not the role of the district court to make ultimate conclusions as to the persuasiveness of proffered evidence." Quiet Tech., 326 F.3d at 1341.  Instead, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 596.

**II.     Analysis**

   **A.     Qualifications**

In a footnote in their initial brief, Defendants imply Gross is not qualified to offer expert opinions in this case because he has no safety experience in a retail setting, but they did not expressly challenge his qualifications at that time.  Doc. 31 at 10 n.6.  In response, Plaintiffs assert Gross is qualified because of his career and education.  Doc. 36 at 16.  In their Reply, Defendants expressly argue Gross is not qualified.  Doc. 43 at 1–2.

The Court finds Gross is qualified to render opinions in this case.  Gross earned an associate degree in industrial safety and security.  Doc. 26-8 at 29.  Additionally, he has a certificate in safety management from the American Society of Safety Engineers.  Doc. 31-2 at 2.  Gross has 20 years of experience working for Marriott Corporation as Director of Security, Director of Loss Prevention, Area Director of Loss Prevention, and Area Loss Prevention Manager.  Doc. 26-8 at 25–28.  In these roles, he was responsible for developing and implementing standards and procedures relating to safety and loss prevention.  Id.  His areas of responsibility included safety of parking lots, parking spaces, and walkways.  Doc. 31-1 at 1.  Gross investigated many slip-and-fall and trip-and-fall claims as part of his employment with Marriott.  Doc. 26-2 at 15.  Since his employment at Marriott, he has worked as a commercial premises liability consultant for the past 21 years.  Doc. 26-8 at 24.  As part of this job, he has conducted site inspections for walking surfaces and parking lots.  Id. at 24.  Therefore, Gross is qualified to render an opinion as to the safety of a commercial premises.

Defendants' argument Gross is not qualified to testify about a purely retail setting, such as Wal-Mart, goes to the weight of his testimony rather than admissibility and is more properly addressed through cross-examination.  See Padgett v. Kmart Corp., No. CV 315-048, 2016 WL

3746671, at *4 (S.D. Ga. July 8, 2016) (rejecting a similar argument and finding Gross qualified as an expert as to testify regarding safety of Kmart parking lot); Trilink Saw Chain, LLC. v. Blount, Inc., 583 F. Supp. 2d 1293, 1304 (N.D. Ga. 2008) ("[I]f there are gaps in an expert witness's qualifications or knowledge, they generally go to the weight of the witness's testimony not its admissibility.") (internal quotation marks omitted); Hendrix v. Evenflo Co., Inc., 255 F.R.D. 568 (N.D. Fla. 2009) ("[A]s to qualification, the standard for admissibility is not stringent . . . an expert must [only] be . . . minimally qualified in his field . . . .").

### B. Opinions 1, 2, and 3

Gross' opinions 1, 2, and 3 are intertwined. Doc. 26-8 at 7–8. In opinion 1, Gross states National Cart publishes a Maintenance Guide that includes an inspection checklist and the Guide was revised on a particular date.[1] Gross also recites certain portions of that checklist. In opinion 2, Gross states no information has been provided that indicates Wal-Mart conducted the inspections described in the National Cart Maintenance Guide. In opinion 3, Gross states if Wal-Mart had conducted inspections consistent with provisions of the Maintenance Guide, "more likely than not" Wal-Mart would have found the bent corral baseplate, which Gross characterizes as "the defective and potentially hazardous condition which created a trip hazard."

As an initial matter, Gross' characterization of opinions 1 and 2 as "opinions" has created ambiguity and confusion. Opinion 3—whether inspections would have revealed the purported defect—is, indeed, an opinion an expert might offer. But opinion 1 is merely a fact Gross relied on in formulating his opinion 3. Similarly, opinion 2 is not an "opinion" at all, but rather is a fact, or, more accurately, a characterization of the evidence produced by Defendants in this

---

[1] Although there appears to have been some dispute about whether this cart corral was manufactured by National Cart, Defendants have since conceded in discovery responses the cart corral in question was purchased from National Cart. Doc. 36 at 6, 10.

litigation. Gross relied on that characterization of the evidence to formulate his opinion 3. Stated differently, Gross had to first identify the National Cart Maintenance Guide (the fact identified as opinion 1), then observe Defendants did not produce information showing they conduct inspections described in the Guide (the fact identified as opinion 2), in order to form the opinion that conducting such inspections would have "more likely than not" led to discovery of the purported defect (the opinion identified as opinion 3). The Court addresses each of Defendants' challenges with these observations in mind.

Defendants first challenge opinion 1, arguing it is not an opinion at all. Doc. 31 at 4–5, 13–14. Defendants are correct. Opinion 1, as stated in the report, is essentially a statement that the Maintenance Guide exists and a recitation of portions of that Guide. However, this distinction is not determinative as to admissibility. Fed. R. Evid. 703. While expert opinion testimony would certainly be subject to the requirements of Rule 702 and Daubert, an expert may also testify about the facts forming the basis for that opinion.[2] Moreover, an expert may rely on the types of materials experts in that particular field routinely rely on in forming their opinions. Fed. R. Evid. 703; City of St. Petersburg v. Total Containment, Inc., No. 06-20953CIV, 2009 WL 3335013, at *4 (S.D. Fla. Mar. 19, 2009) ("Experts routinely rely on the work of others, a practice permitted by Fed. R. Evid. 703, so long as the facts or data on which they rely is of the

---

[2]  Rule 702 itself notes an expert may "testify in the form of an opinion or *otherwise* . . . ." (emphasis added). Further, Rule 703 states the proponent of an opinion may disclose otherwise inadmissible facts or data underlying an expert opinion to the jury "if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." Therefore, Rule 703 contemplates admitting either admissible or otherwise inadmissible facts or data. Additionally, Rule 705 states an expert may provide an opinion without first testifying about underlying facts or data, but the expert may need to disclose underlying facts or data on cross examination. The Notes of Advisory Committee on the 1972 Proposed Rules point out the current Rule 705 has eliminated the previous requirement of explaining underlying facts or data prior to rendering an opinion. See also 29 Charles Alan Wright & Arthur. R. Miller, Federal Practice and Procedure § 6294 (2d ed.) (discussing Rule 705 in application). Thus, the Rules clearly contemplate an expert testifying about the facts and data underlying his opinion even if they are not opinions themselves.

type reasonably relied on by experts in the relevant field."). Here, Gross relied on the Maintenance Guide as a basis for the opinion expressed in opinion 3. Plaintiffs need not satisfy every Daubert requirement for every single fact underlying the ultimate opinion offered by Gross. Therefore, as long as Gross meets the standards for offering the opinion expressed in opinion 3, he will also be permitted to offer the testimony about the facts underlying that opinion, namely the Maintenance Guide exists and the contents of the Guide, subject to Rules 703 and 705.

In opinion 2, Gross states no information has been provided that indicates Wal-Mart conducted the inspections described in the National Cart Maintenance Guide. Gross states he based this statement on "discovery information received to date." Defendants argue Gross should be precluded from offering opinion 2 because it is unreliable and unhelpful to the trier of fact. Doc. 31 at 5, 14. In response, Plaintiffs summarize all of the discovery responses submitted by Wal-Mart in the case and two depositions of Wal-Mart employees, which they claim show Defendants did not have any formal process for inspecting the cart corrals. Doc. 36 at 10–13. Plaintiffs assert Gross discussed Wal-Mart's discovery responses with Plaintiffs' counsel to form the basis of his opinion. Id. at 13.

As with opinion 1, opinion 2 is a factual statement—or a characterization of facts—and not an expert opinion. Gross is merely stating there is no information provided in this litigation that shows Defendants performed inspections described in the Maintained Guide. Like opinion 1, as long as Gross meets the standards for offering the opinion expressed in opinion 3, he will also be permitted to offer the testimony about the facts underlying that opinion, namely that

Defendants have produced no information showing they conducted inspections described by the Maintenance Guide.[3]

Opinion 3 sets forth Gross' actual opinion regarding inspections: "Had Walmart conducted inspections consistent with the directions and guidance from the manufacturer, National Cart, more likely than not Walmart would have found the defective and potentially hazardous condition which created a trip hazard." Doc. 26-8 at 8. Defendants argue Gross should not be permitted to offer opinion 3 because it is based upon unreliable methodology. Doc. 31 at 14–15. Defendants assert the opinion lacks factual support and is improperly speculative. Id. While Plaintiffs argue Gross' opinions as a whole are based upon reliable methodology, Plaintiffs fail to address why this specific opinion is admissible.

In his expert report, Gross states the bases for his third opinion are the photographs of the cart corral, the cart corral manufacturer's direction and guidance for conducting inspections, and the American Society of Testing and Materials ("ASTM") Standard Practice for Safe Walking Surfaces F1637-13. Doc. 26-8 at 8. When asked about his third opinion in his deposition, Gross suggested he relied on his experience for his conclusion that Wal-Mart employees more likely than not would have found the bar was not flush with the ground. Doc. 26-2 at 36.

---

[3] In opinion 2, Gross states the basis for his second opinion is "discovery information received to date." However, at his deposition, Gross acknowledged he did not personally review any of the discovery responses provided by Wal-Mart in this case. Doc. 26-2 at 5. Gross testified he discussed the deposition of one Wal-Mart employee with Plaintiffs' counsel but was unable to recall any specifics about the deposition and stated he did not review the transcript. Doc. 26-2 at 5, 39. Thus, Gross' statement in opinion 2 was not based on his actual review of any discovery materials produced by Defendants in this case, but rather on Plaintiff's counsel's description of those materials to Gross. Plaintiffs attempt to show Gross' statement was correct by cataloging Wal-Mart's discovery responses, but Plaintiffs do not dispute Gross did not personally review those responses. The Court need not resolve whether Gross could rely on Plaintiffs' counsel's conclusions about discovery responses in forming his opinions, because, as explained below, Gross should be precluded from offering opinion 3 at trial. However, the Court notes an expert merely parroting an attorney's characterization of the opposing party's discovery responses likely provides very little assistance to the trier of fact.

Gross has not shown opinion 3 is the product of any reliable methodology. An expert's opinion may be based on experience, rather than scientific methods, but where that is the case, the expert must show "how [his] experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion and how that experience is reliably applied to the facts." Frazier, 387 F.3d at 1261 (quotation and citation omitted). Gross has not done so here. Gross testified at length about how he reached opinion 3. Doc. 26-2 at 35–36. At base, Gross reached his conclusion based on the principle, "If you're looking for it, you're going to find this." Id. at 35. In other words, Gross believes the inspections described in the Maintenance Guide would have led Wal-Mart employees to discover the alleged hazard because they are inspections designed to discover hazards. Whether Gross' underlying rationale is correct is not at issue. Instead, the Court must determine whether Gross' opinion 3 is based on his experience, namely his experience in safety in commercial settings. Gross has not shown it is. Gross has not connected his own experience or any specialized knowledge, skill, training, or education he has to the opinion expressed in opinion 3.[4] Instead, Gross' opinion 3 is based on the common sense principle that "If you're looking for it, you're going to find this." This is not a reliable methodology, and an opinion based on such a common-sense principle would not be helpful to the jury at all. This observation is one that would plainly be a matter within the ken of an ordinary lay juror. Gross' opinion 3 is also based almost entirely on Plaintiffs' counsel's

---

[4] Gross makes one conclusory statement in his deposition referencing his background and opinion 3, "Based on my experience and training hundreds of employees how to do inspections visually and tactually, they should be able to see this." Doc. 26-2 at 36. While Gross makes this passing reference, he does not provide any actual explanation of the connection, and this passing reference is overwhelmed by his more robust testimony his opinion is based on the common-sense proposition that people tend to find things when they are looking for them.

characterization of Defendants' discovery responses in this case, which further erodes any reliability of the basis for opinion 3 and diminishes the opinion's helpfulness to the jury.[5]

Plaintiffs have not met their burden of demonstrating Gross' opinion in opinion 3 is admissible expert opinion testimony. Therefore, Gross may not offer opinion 3 at trial. Because opinions 1 and 2 are merely facts and characterizations underpinning Gross' opinion 3 which Gross cannot offer at trial, it would be improper to allow Gross to offer opinions 1 and 2. Accordingly, the Court grants the portion of Defendants' Motion seeking to preclude Gross from offering opinions 1, 2, or 3 at trial.

C. Opinion 4

Gross' opinion 4 is that the base plate is a trip hazard. Defendants argue Gross' fourth opinion is based upon unreliable photographs and is unhelpful to the jury.[6] Doc. 31 at 16–21. Plaintiffs argue Gross' opinions on the whole are based upon reliable methodology and helpful without delineating each specific opinion. Doc. 36 at 16–26.

Because Gross' opinion 4 is not helpful to the jury, the Court declines to address whether Gross' photography methodology is reliable. In his expert report, Gross describes his methodology as "measuring [the metal bar] with a ruler and adding an inch overlay in the picture which more clearly depicts the measurements." Doc. 26-8 at 7. In both his deposition and expert report, Gross recognized the basis for his fourth opinion is "just addition and subtraction

---

[5] Gross also identified the ASTM Standards as support for opinion 3, but it is unclear how those standards informed Gross' opinion 3. Id. at 20–22. Gross recognized in his own deposition a Wal-Mart employee would not have necessarily known the elevated metal bar was a ASTM violation. Doc 26-2 at 36. Additionally, the ASTM Standards have no clear connection to inspections of cart corrals under the National Cart Maintenance Guide.

[6] Rather than specifically arguing opinion 4 is unreliable, Defendants instead argue Gross' overall conclusion the metal bar constituted a trip hazard is based upon unreliable methodology. Doc. 31 at 17–21. Thus, this argument necessarily involves both opinion 3 and opinion 4 because Gross refers to the metal bar as a trip hazard in both opinions. Doc. 26-8 at 8.

math" after looking at a ruler in the photographs. Doc. 26-2 at 40; Doc. 26-8 at 8. A jury of laypersons can look at the photographs as Gross did and then complete their own basic math to determine the height of the metal bar without the help of an expert witness. There is no readily apparent need for Gross to read these measurements instead of the jury when Gross did not even take these photos himself.

In addition, whether an elevated surface constitutes a trip hazard is well within the ordinary experience and understanding of an average layperson. See Torres v. Carnival Corp., 635 F. App'x 595, 598–600 (11th Cir. 2015) (affirming district court's determination expert testimony as to walking and efficacy of warning using ASTM, Americans with Disabilities Act, and Accessible and Usable Buildings and Facilities standards in trip-and-fall case was unreliable and unhelpful); White v. W.G. Parcel B. LLC, No. 615CV867, 2016 WL 8500026, at *5 (M.D. Fla. Nov. 22, 2016) ("The raised landing . . . [is a] matter[] within the understanding of the jury and [is] commonly known and readily observable."); Alzubaidi, 1991 WL 99423, at *1 ("When the matter to be determined is within the common knowledge of the jury and the ordinary experience will render a jury competent to decide the issue, as in the typical 'slip and fall in a store' case, then expert testimony should not be admitted.") (citations omitted). This is especially the case when most jurors are likely familiar with shopping cart corrals and have used them throughout their lifetimes. There is no reason a jury of laypersons would be unable to determine whether this cart corral was a trip hazard from their own life experience. Plaintiffs generally argue, "Layperson[s] rarely, if ever, consider how to properly inspect a parking lot for trip hazards." Doc. 36 at 17, 22. But Gross' opinion 4 does not concern how to properly conduct inspections; the opinion concerns whether the corral baseplate was a trip hazard.

Gross' opinion 4 alludes to Gross' familiarity with various building and industry codes. Although an explanation of building codes and industry standards could potentially be helpful to the jury, Gross and Plaintiffs have not stated Gross intends to testify about these standards. See, e.g., Wiggins v. Belk, Inc., No. 4:11-CV-88, 2012 WL 135595, at *6 (S.D. Ga. Jan. 17, 2012) (holding expert could testify as to codes and industry standards in trip-and-fall case relating to electrical outlet because they were not within the understanding of the average lay person). Gross merely cites to the National Fire Prevention Association Means of Egress Section, International Building Code, and the Americans with Disabilities Act as part of the basis for his opinion 4 that the baseplate constituted a trip hazard. Doc. 26-8 at 8. Gross does not state why he is qualified to testify about these standards or how or whether he will explain them to the jury at trial in his expert report.[7] Moreover, Gross specifically stated in his deposition he did not intend to offer any testimony as to the duty of care in this case, nor has he suggested he intends to testify as to custom within the industry. Doc. 26-2 at 17, 33; Doc. 26-8 at 6; see Muncie Aviation Corp. v. Party Doll Fleet, Inc., 519 F.2d 1178, 1180 (5th Cir. 1975) ("Evidence of custom within a particular industry, group, or organization is admissible as bearing on the standard of care in determining negligence."). In sum, Plaintiffs have not shown opinion 4 is helpful to the jury by a preponderance of the evidence. Allison, 184 F.3d at 1306. Accordingly, the Court grants this portion of Defendants' Motion, and Gross will not be permitted to offer opinion 4 at trial.

---

[7] In his deposition, Gross did state in passing he intends to testify about relevant standards and codes, doc. 26-2 at 19–20, but he did not expand upon the specific standards he would explain to the jury or how he would do so. This passing reference carries little to no weight. Indeed, Gross testified he was not relying on the standards to form his opinion about whether the base plate constituted a trip hazard. Id. at 31–32.

## CONCLUSION

For the foregoing reasons, I **GRANT** Defendants' Motion to Exclude. Gross shall not be permitted to offer the opinions described in his report in this case.

**SO ORDERED**, this 22nd day of July, 2021.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA