# In the United States District Court for the Southern District of Georgia Waycross Division

CONNIE JO MORRIS and JOHNNY MORRIS,

Plaintiffs,

v.

WAL-MART STORES EAST, LP; WAL-MART STORES EAST, LP, D/B/A WAL-MART SUPERCENTER #593; WALMART INC F/K/A WAL-MART STORES, INC.,

Defendants.

No. 5:20—CV-32

**ORDER**

Before the Court is Defendants' Motion for Summary Judgment (the "Motion"). Dkt. No. 29. For the reasons stated below, Defendants' Motion is **DENIED.**

## I. BACKGROUND[1]

This case arises from a trip and fall in the parking lot of a Walmart store. On the afternoon of February 6, 2018, Plaintiff Connie Jo Morris ("Mrs. Morris") went to her regular Walmart store

[1] The Court takes Defendants' Statement of Undisputed Material Facts as true where Plaintiff either admits those facts or fails to cite to the record when disputing them. See S.D. Ga. L.R. 56.1; Fed. R. Civ. P. 56(c)(1), (e); see also Scott v. Rite Aid of Ga., Inc., 918 F. Supp. 2d 1292 (M.D. Ga. 2013) (deeming defendant's statement of material facts as admitted where plaintiff failed to "specifically controvert Defendant's facts by specific citation to the record").

at 1450 Bowens Mill Road, SE, in Douglas, which is in Coffee County, Georgia. Dkt. No. 29-5 ¶¶ 1, 10. It was a clear day. Dkt. No. 26-1 at 6. Mrs. Morris usually parked closer to the grocery entrance of this Walmart, but because there were no parking spots in that area on this day, she parked between the two entrances. Id. at 7. Mrs. Morris went inside to go shopping, retrieved a shopping cart, shopped for and purchased several items, and then unloaded her cart into her vehicle. Id.; Dkt. No. 29-5 ¶ 2. Mrs. Morris then returned her cart to the closest shopping cart corral in the parking lot by pushing the cart into the corral and stepping inside. Dkt. No. 29-5 ¶¶ 2, 3. Mrs. Morris had no difficulty getting her shopping cart inside of the cart corral. Id. ¶ 4. After returning her cart, Mrs. Morris turned around to exit the corral, but as she exited, she tripped and fell over a metal bar or strap that lay across the ground on the open end of the corral (the "base plate"). Id. ¶¶ 6, 7. Mrs. Morris believes the toe of her left boot hit the base plate, which caused her to fall to the ground. Id. ¶ 6. Mrs. Morris claims to have suffered injuries to her left hip and neck as a result of the fall. Dkt. No. 26-1 at 17-18.

On February 3, 2020, Mrs. Morris and her husband, Johnny Morris, filed this suit in the Superior Court of Coffee County, Georgia against three entities: Wal-Mart Stores East, LP; Wal-Mart Stores East, LP, D/B/A Wal-Mart Supercenter #593; and Walmart Inc

F/K/A Wal-Mart Stores, Inc. Dkt. No. 1-1 at 4.[2] Plaintiffs brought two counts against Defendants: Mrs. Morris's claim for negligence and Mr. Morris's claim for loss of consortium. Id. at 8, 10. Plaintiffs specifically contend that Defendants were negligent for "fail[ing] to use reasonable care in the upkeep and maintenance" of the shopping cart corral; "fail[ing] to inspect and keep the shopping cart corral free from defects and conditions rendering [it] unsafe"; and "fail[ing] to warn [Mrs. Morris] of the unsafe conditions" of the corral. Id. at 9-10. Defendants removed the action to this Court on March 5, 2020 on the basis of diversity jurisdiction. Dkt. No. 1 at 1.

On December 1, 2020, Plaintiffs moved for sanctions against Defendants under Federal Rule of Civil Procedure 38(a)(3)(B)(iv), maintaining that Defendants spoliated critical evidence by having the subject cart corral removed and destroyed. Dkt. No. 25 at 1. Defendants responded in opposition, dkt. no. 26, and the Magistrate Judge ultimately denied Plaintiffs' motion for sanctions, dkt. no. 48. Defendants filed the subject motion for summary judgment, dkt. no. 29, on February 10, 2021. The next day, Defendants filed a motion to exclude the testimony of Plaintiffs' expert, Jeffrey Gross. Dkt. No. 31. Plaintiffs responded in opposition to the motion to exclude on March 4, 2021, and then responded in

---

[2] Defendants maintain that the only named Defendant should be Wal-Mart Stores East, LP, because it "was the entity involved in the day-to-day operation of the Walmart store at issue." Dkt. No. 1 at 1.

opposition to the motion for summary judgment on March 10, 2021. Dkt. Nos. 36, 38. Defendants replied to both responses. Dkt. No. 43 (motion to exclude expert testimony); Dkt. No. 44 (summary judgment motion). The Magistrate Judge granted Defendants' motion to exclude Mr. Gross's testimony, ruling that his opinions were, *inter alia*, unreliable and unhelpful to the trier of fact. Dkt. No. 46. The Court held a hearing on the subject motion for summary judgment on June 15, 2021. The Motion has been fully briefed and is now ripe for review.

## II. LEGAL STANDARD

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" where the evidence would allow "a reasonable jury to return a verdict for the nonmoving party." FindWhat Inv. Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A fact is "material" only if it "might affect the outcome of the suit under the governing law." Id. (quoting Anderson, 477 U.S. at 248). Factual disputes that are "irrelevant or unnecessary" are not sufficient to survive summary judgment. Anderson, 477 U.S. at 248.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. See Celotex Corp.

v. Catrett, 477 U.S. 317, 323 (1986). The movant must show the court that there is an absence of evidence to support the nonmoving party's case. See id. at 325. If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. See Anderson, 477 U.S. at 257.

The nonmovant may satisfy this burden in one of two ways. First, the nonmovant "may show that the record in fact contains supporting evidence, sufficient to withstand a directed verdict motion, which was 'overlooked or ignored' by the moving party, who has thus failed to meet the initial burden of showing an absence of evidence." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1116 (11th Cir. 1993) (quoting Celotex Corp., 477 U.S. at 332 (Brennan, J., dissenting)). Second, the nonmovant "may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1117. Where the nonmovant attempts to carry this burden with nothing more "than a repetition of his conclusional allegations, summary judgment for the [movant is] not only proper but required." Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981) (citing Fed. R. Civ. P. 56(e)).

## III. DISCUSSION

In Georgia, a plaintiff-invitee must prove two things to recover for injuries sustained in a trip-and-fall action: "(1) that the defendant had actual or constructive knowledge of the hazard; and (2) that the plaintiff lacked knowledge of the hazard despite the exercise of ordinary care due to actions or conditions within the control of the owner/occupier." Robinson v. Kroger Co., 493 S.E.2d 403, 414 (Ga. 1997); see also O.C.G.A. § 51-3-1 (Georgia premises liability statute). "The true basis of a proprietor's liability for personal injury to an invitee is the proprietor's superior knowledge of a condition that may expose the invitees to an unreasonable risk of harm." Cocklin v. JC Penney Corp., 674 S.E.2d 48, 51 (Ga. Ct. App. 2009) (quoting Hannah v. Hampton Auto Parts, Inc., 506 S.E.2d 910, 912 (Ga. Ct. App. 1998)). The Supreme Court of Georgia has cautioned members of the judiciary that:

> the "routine" issues of premises liability, i.e., the negligence of the defendant and the plaintiff, and the plaintiff's lack of ordinary care for personal safety are generally not susceptible of summary adjudication, and that summary judgment is granted only when the evidence is plain, palpable, and undisputed. . . . [A]n invitee's failure to exercise ordinary care is not established as a matter of law by the invitee's admission that he did not look at the site on which he placed his foot or that he could have seen the hazard had he visually examined the floor before taking the step which led to his downfall. Rather, the issue is whether, taking into account all the circumstances existing at the time and place of the fall, the invitee

> exercised the prudence the ordinarily careful person would use in a like situation.

Robinson, 493 S.E.2d at 414.

Here, neither party disputes that Mrs. Morris was an invitee on Defendants' premises. See, e.g., Dkt. No. 29 at 7 (Defendants' discussing owner/operator duties to invitees without alleging that Mrs. Morris was not an invitee). Defendants do dispute, however, that they had actual or constructive knowledge of the hazard. See id. at 15. Defendants also contend that even if they *did* have knowledge of the base plate's being a hazard, Mrs. Morris had at least equal knowledge of any such hazard and therefore cannot recover. Dkt. No. 44 at 4–7. Specifically, Defendants argue that summary judgment is appropriate here for two reasons: first, because Mrs. Morris successfully traversed the base plate "just seconds before falling on her way out of the corral"; and second, because the base plate was "an open and obvious static condition" of which Mrs. Morris was aware. Dkt. No. 29 at 2. Further, because Mrs. Morris's negligence claim fails as a matter of law, Defendants assert, Mr. Morris's derivative loss of consortium claim also fails. Id. at 17.

**A. Actual or Constructive Knowledge**

Neither party contends that Defendants had actual knowledge of the base plate's being hazardous or raised off the ground. See Dkt. No. 44 at 5 n.5 (Defendants' pointing out that although

Plaintiffs state Defendants had "actual, or at least, constructive knowledge," Plaintiffs do not discuss actual knowledge within their response brief (citing Dkt. No. 38 at 13)). The issue, then, is whether Defendants had constructive knowledge of the hazard such that they can be held liable for Plaintiffs' injuries.

An owner or occupier's "[f]ailure to discover [a] defect through the exercise of reasonable care in inspecting the premises gives rise to constructive knowledge where the owner or occupier had an opportunity to discover the dangerous condition and to remedy it." Christensen v. Overseas Partners Cap., Inc., 549 S.E.2d 784, 786 (Ga. Ct. App. 2001) (quoting CFUS Props. v. Thornton, 539 S.E.2d 571, 574 (Ga. Ct. App. 2000)). "However, there must be some evidence, direct or circumstantial, that indicates that the condition was allowed to exist for a sufficient time for an inspection to discover it and to remove the danger." CFUS Props., 539 S.E.2d at 574. If "[a] jury could infer that [the hazard], a static condition, had existed 'for a sufficient time for an inspection to discover it and to remove the danger,'" then a question of fact remains as to the owner's constructive knowledge of the hazard. Christensen, 549 S.E.2d at 786 (quoting CFUS Props., 539 S.E.2d at 574).

Defendants contend that a reasonable inspection would *not* have revealed the hazardous condition of the elevated base plate, and that, in fact, "Plaintiffs concede that the hazard was not

readily discernable." Dkt. No. 44 at 4 (citing Dkt. No. 38 at 14, 18, 20). Defendants argue "the testimony establishes that policies and procedures [for inspection of the cart corrals] were in place and inspections were performed," pointing to two Walmart employees' testimony for support. Id. at 6. First, one Walmart manager "testified that store managers drive around the building and look at the parking lot every day to check for hazards . . . and that she conducted such [an] inspection on the morning of Mrs. Morris's fall." Id. (citing Dkt. No. 26-6 at 26-28). Second, Walmart's 30(b)(6) deponent[3] "confirmed the process of Walmart managers inspecting the exterior of the store and parking lot each day before their shift" and testified that "you're looking at everything in the parking lot to make sure everything is good, yes, sir" when asked "whether these daily parking lot inspections would cover inspecting the metal base plates of the cart corrals." Id. (quoting Dkt. No. 29-4 at 9-13).

Plaintiffs, however, contend that "Defendants had at least constructive knowledge of the elevated metal crossbar, or base plate . . . that caused plaintiff Morris to trip and fall." Dkt. No. 38 at 13. Plaintiffs acknowledge that the Walmart managers are required to look over the parking lots as they arrive for work each day and that cart associates "travel in and out of each cart

---

[3] Federal Rule of Civil Procedure 30(b)(6) allows corporate parties to designate persons to testify on their behalf.

corral five to ten times per day," but they contend that none of Defendants' employees "performed reasonable inspections of the cart corrals while touring and working in the parking lot." Id. at 13–14. In support of this contention, Plaintiffs point to Walmart's lack of specific "protocols, checklists[,] or training information" for inspecting cart corrals. Id. at 15.

To start, the Court notes Defendants' argument that a reasonable inspection would *not* have revealed this hazard is logically inconsistent with their argument that Mrs. Morris had at least equal knowledge because the base plate's elevation was "open and obvious." Compare Dkt. No. 44 at 4 ("Plaintiffs concede that the hazard was not readily discernable.") with Dkt. No. 29 at 11 ("Summary judgment is warranted due to Plaintiff's equal knowledge of an open, obvious, and static condition."). If the base plate's elevation was, in fact, open and obvious, then it seems Defendants should have discovered the hazard upon a reasonable inspection. Indeed, Defendants changed their argument at the hearing on the subject motion and stated that they were *not*, in fact, arguing that the hazard was open and obvious.

Plaintiffs have pointed to evidence that creates a genuine issue of fact as to Defendants' constructive knowledge of the hazard. Although Defendants continue to maintain that the managers check the parking lot for hazards every day, and that one employee did so that morning, Plaintiffs are correct in that the evidence

does not unequivocally show that any employees at the Douglas Walmart location *specifically inspect the cart corrals* for defects. See Dkt. No. 38 at 15; see also Osman v. Olde Plantation Apartments on Montreal, LLC, 607 S.E.2d 236, 240 (Ga. Ct. App. 2004) ("[A]lthough the maintenance supervisor testified that he did inspect the privacy fence and gate, the evidence is in conflict as to what that inspection should have revealed.").

This case differs from those where Georgia courts have granted summary judgment for defendant landowners on the basis of a lack of actual or constructive knowledge, because, here, a jury issue exists as to whether a reasonable inspection should have revealed the hazard over which Mrs. Morris tripped. Cf., e.g., Thomas v. Deason, 658 S.E.2d 165 (Ga. Ct. App. 2008) (granting summary judgment to defendant where the only evidence available was that defendant regularly inspected the yard and the hazard was "difficult to see"); Lindsey v. Ga. Bldg. Auth., 509 S.E.2d 749 (Ga. Ct. App. 1998) (granting summary judgment to defendant where "[n]o such evidence is extant" as to whether the proprietor could have easily discovered and corrected the alleged hazard); Padilla v. Hinesville Hous. Auth., 509 S.E.2d 698, 700 (Ga. Ct. App. 1998) ("Nothing in the record indicates that any inspection would have discovered a problem with the metal edging on the stairs . . . ."). In this case, Defendants' knowledge of the alleged hazard is a question for the jury and not for the Court. See Barton v. City

of Rome, 610 S.E.2d 566, 570 (Ga. Ct. App. 2005) ("Except in extraordinary cases where the facts are plain and indisputable, the jury should decide all questions of negligence . . . .").

**B. Open and Obvious**

"A static condition is one that does not change and is dangerous only if someone fails to see it and walks into it." D'Elia v. Phillips Edison & Co., Ltd., 839 S.E.2d 721, 723 (Ga. Ct. App. 2020) (quoting Jones Lang LaSalle Ops. v. Johnson, 829 S.E.2d 629, 631 (Ga. Ct. App. 2019)), reconsideration denied (Mar. 23, 2020). "An uneven walkway is a static condition." Id. at 723–24 (citing Nemeth v. RREEF Am., 643 S.E.2d 283 (Ga. Ct. App. 2007)). Where "nothing obstructs the invitee's ability to see the static condition, the proprietor may safely assume that the invitee will see it and will realize any associated risks." Id. (citing Rentz v. Prince of Albany, 797 S.E.2d 254 (Ga. Ct. App. 2017)).

Here, Defendants argued in their briefs that "the base plate was an open and obvious static condition" because "Mrs. Morris had an unobstructed view of the metal base plate at the entrance of the shopping cart corral and knew that it was present" but "failed to notice its slight rise from the ground while exiting the corral." Dkt. No. 29 at 8, 14. Accordingly, Defendants contend that Mrs. Morris therefore had "equal knowledge" to that of Defendants and "her fall could have been avoided had she exercised due care while exiting the cart corral." Id. at 11. However, at

the hearing on the subject Motion, Defendants' counsel retracted this argument and stated she was *not* arguing that the hazard was open and obvious.

Plaintiffs have consistently argued that Mrs. Morris "did not see the crossbar as she approached the cart corral because she had the cart in front of her," that "the elevated crossbar was the same color as the pavement making it hard to see," and that "the metal crossbar was in a shadow making it even harder to see." Dkt. No. 38 at 18. Plaintiffs maintain that the hazard "was camouflaged from [Mrs. Morris]'s vantage point." Id.

It should be noted that Defendants describe the base plate's height from the ground as "a negligible 0.95 centimeters (or 3/8 of an inch)" when disputing their constructive knowledge of the hazard, dkt. no. 44 at 7, but also describe it as an "open and obvious static condition" when characterizing Mrs. Morris's knowledge of the hazard, dkt. no. 29 at 2. That both Defendants and Plaintiffs contend "the hazard was not readily discernible" suffices itself to preclude summary judgment on the basis that it was "open and obvious". See Dkt. No. 44 at 4; Dkt. No. 38 at 18; see also Simon v. Murphy, 829 S.E.2d 380, 384 (Ga. Ct. App. 2019) (concluding that "reasonable minds can differ on whether the damaged section of the grey steel crossbar in this case, elevated slightly more than an inch above grey asphalt, was open and obvious"), cert. denied (Jan. 13, 2020). Because a prior

successful traversal of the hazard precludes recovery only where a hazard is "readily discernible," and there is an issue of fact as to the hazard's discernibility, this issue of fact precludes granting Defendants' motion on the basis of prior traversal as well. See Strauss v. City of Lilburn, 765 S.E.2d 49, 52 (Ga. Ct. App. 2014) ("[T]he rule imputing knowledge of a danger to a person who has successfully negotiated an alleged dangerous condition before applies only to cases involving a static condition that is *readily discernible* to a person exercising reasonable care for his own safety." (quoting Perkins v. Val D'Aosta Co., 699 S.E.2d 380, 383 (Ga. Ct. App. 2010))).

### C. Loss of Consortium

Because there is an issue of fact as to Mrs. Morris's negligence claim, and Defendants' only argument as to Mr. Morris's loss of consortium claim is dependent upon their motion's being granted as to Mrs. Morris's negligence claim, Defendants' motion must also be denied as to Mr. Morris's loss of consortium claim.

## IV. CONCLUSION

For the reasons above, Defendants' Motion for Summary Judgment, dkt. no. 29, is **DENIED**. The parties' proposed consolidated pretrial order is due within twenty-one (21) days of the date of this Order.

**SO ORDERED**, this 5th day of August, 2021.

HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA